## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:13-cr-37-GZS |
| | ) | |
| TIMOTHY MAJERONI, | ) | |
| | ) | |
|       Defendant | ) | |

### RECOMMENDED DECISION ON MOTION TO SUPPRESS

The defendant, Timothy Majeroni, charged in an indictment with possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2256(8)(A), Indictment (ECF No. 1), moves to suppress any evidence found in his apartment in Portland, Maine, on November 26, 2012, by a United States Probation Officer.  Motion to Suppress Evidence ("Motion") (ECF No. 14) at [6].  An evidentiary hearing was held before me on May 22, 2013, at which the defendant appeared with his attorney.  The government tendered two witnesses and offered six exhibits, all of which were admitted without objection.  The defendant offered no witnesses or exhibits. After both sides rested, counsel argued orally.  I now recommend that the following findings of fact be adopted and that the motion to suppress be denied.

### I.  Proposed Findings of Fact

On November 26, 2012, U.S. Probation Officer Kristin Cook, an experienced federal probation officer, decided to visit the defendant, whose release she was supervising, at his residence on Mayo Court in Portland, Maine.  She had been to that residence five or six times previously.  The defendant was then on supervised release following service of a prison term on his conviction of failure to update his registration as a sex offender.  Government Exh. 3.

Cook went to the defendant's residence because she had received alerts from the GPS unit assigned to the defendant over the weekend that were not definitive, and she needed to resolve them. She thought that it was likely that the unit needed to be moved to another location in the defendant's apartment. She was accompanied by U.S. Probation Officer Laura Tait. They arrived at around 4 p.m. The officers knocked on the defendant's door without a prompt response. The defendant took a long time to answer the door. When asked, he told the officers that he had been lying down.

Cook asked the defendant whether anyone else was in the apartment. After he answered "no," the officers accompanied him into the living room of the apartment, to the right of the entry door. While she spoke with the defendant about the need to move the GPS equipment, Cook noticed a desk, chair, and air mattress in the previously-empty second bedroom, which opened off the living room. She saw a burning cigarette and a cup of coffee on the desk.

With the defendant's assistance, Cook moved the GPS beacon from the living room of the apartment to the plaintiff's bedroom, to the left of the front door. The officers and the defendant then went back into the living room, and Cook asked the defendant why the burning cigarette and the cup of coffee were on the desk in the small second bedroom. The defendant responded that he did not know. By this time Cook had also seen on the desk what she knew to be the power cord of a laptop computer. She could see one end plugged into the wall outlet and the other end on the desk. Cook had not given the defendant permission to possess a computer.

Cook then asked the defendant whether he had a laptop, and he said, "No. That's for my remote and my cable." Cook then asked if the defendant minded if she took a look in the small bedroom, and the defendant said, "no." Once in the room, Cook noticed clothing piled on top of an open backpack. She moved the clothing and saw a laptop computer inside the backpack.

When she lifted the backpack, she found an operational modem underneath it. She then asked the defendant why he had lied about the laptop, and he said that he didn't know. He told Cook that he had purchased the laptop about two months earlier at a used computer store.

Cook told the defendant that she was seizing the computer and the modem. She brought them out to her vehicle and gave the defendant a receipt. The entire encounter lasted about five minutes. Cook did not search further after finding the laptop and the modem.

The following day, the defendant came to Cook's office at her request. The defendant told Cook that he wanted to be honest, and that he had stolen the computer from a friend of his daughter. Cook did not believe this explanation. She thereafter gave the laptop to U. S. Probation Officer Bryce Turgeon, who was going to do a forensic analysis of the computer. She told Turgeon that the defendant had hidden the laptop, and that it was a condition of his supervised release that he not have a computer without the consent of his supervising officer, which he did not have. Turgeon was familiar with the defendant and his criminal record.

Cook wrote a petition to revoke the defendant's supervised release and a revocation report, summarizing the events of the seizure. She did not include her reason for going to the defendant's apartment because it was not pertinent to the conduct that led to the revocation. She did not include the defendant's purported theft of the computer in her report because she did not want to include it as additional conduct violating the conditions of supervised release.

Government Exhibits 5 and 6 are forms signed by the defendant acknowledging the conditions of supervised release in connection with earlier charges. There is no similar written acknowledgement of the terms of supervised release effective on November 26, 2012. However, Cook was told by Ryan Petroff, her immediate predecessor as the defendant's probation officer,

that Petroff had read the conditions to the defendant and the defendant had acknowledged them orally.

The conditions of release applicable to the defendant on November 26, 2012, included, in relevant part:

> 1. Defendant shall consent to the U.S. Probation Office conducting periodic, unannounced examinations of his computer equipment, which may include hardware, software, and copying of all data from his computer(s). This includes removal of such equipment, when necessary, for the purpose of conducting a more thorough examination;
>
> 2. Defendant shall not possess or use a computer to access an online "computer service" at any location, including his employment, without the supervising officer's prior approval. This includes any Internet service provider, bulletin board system or any other public or private computer network;
>
> 3. Defendant shall at all times readily submit to a search of his residence, and of any other premises under his dominion and control, by his supervising officer, upon the officer's request when the officer has reasonable basis to believe that such a search will lead to the discovery of evidence of violation of the terms of supervised release, including pornographic materials that Defendant is prohibited from possessing under the rules of his sex offender treatment program. Failure to submit to such a search may be grounds for revocation[.]

Govt. Exh. 3 at 4 ("Additional Supervised Release Terms").

Turgeon, an experienced U. S. Probation Officer, includes among his duties overseeing a program to monitor computer use by probationers and supervisees and to examine computers for possible violations of the terms of probation or supervised release. He was trained in the examination of computers, hard drives, and cell phones in a two-week course; he has conducted 26 such examinations. He decided to do a full forensic examination of the defendant's laptop because it had never been authorized. He knew that the defendant had a previous conviction for possession of child pornography and had previously violated conditions of supervised release.

Turgeon copied the hard drive from the laptop and verified it. He used Forensic Tool Kit, which will pull up image files from the hard drive, in order to determine what the defendant had been doing on the laptop. He was looking for any kind of pornography, because he knew that the defendant was participating in sex offender treatment, and the contract for that program prohibits participants from looking at any kind of pornography. Turgeon found some images of possible child pornography on the hard drive.

Turgeon then made bookmarks of files or documents that might constitute violations of the terms of the defendant's supervised release or new criminal conduct and contacted the United States Attorney's Office to see how it wanted to proceed. He subsequently gave the hard drive to Special Agent Fasulo. Turgeon created a two-page report dated December 11, 2012; he had no further contact with the computer.

## II.  Discussion

### A.  Applicable Legal Standard

The defendant first argues that "the terms of [his] supervised release did not authorize probation, or any other law enforcement agency, to search his residence or seize his property, without probable cause." Motion to Suppress Evidence ("Motion") (ECF No. 14) at [2]. This is simply incorrect. If, as the defendant contends, the terms merely required him to consent to searches and seizures, with revocation as the potential penalty for refusing to do so, *id*., the "reasonable basis to believe" language would be read out of paragraph 3 of the "additional terms" quoted above. *See Marshall v. Scotia Prince Cruises Ltd*., No. 03-26-P-H, 2003 WL 22709076, at *5 & n.7 (D. Me. Nov. 17, 2003) (interpretation of contract language rendering it surplusage is to be avoided).

The Supreme Court has specifically held that "reasonable suspicion is constitutionally sufficient [to] render a warrant requirement unnecessary" for a search of a probationer's residence. *United States v. Knights*, 534 U.S. 112, 121 (2001). The First Circuit more recently noted that "supervised release is more closely akin to parole than to probation[.]" *United States v. Weikert*, 504 F.3d 1, 11 n.9 (1st Cir. 2007). Then, the First Circuit held that "a probationer has a substantially diminished expectation of privacy" with respect to warrantless searches, and that "[t]his expectation of privacy can be further shaped by search conditions in the probation order where the order clearly expresses the conditions and the probationer is unambiguously informed of them." *United States v. Graham*, 553 F.3d 6, 15-16 (1st Cir. 2009). Where "the police possess reasonable suspicion that a probationer is violating the terms of probation, the Fourth Amendment [does not] demand[] that the police secure a search warrant before executing a probation search." *Id*. at 18.

In addition, Congress has specifically authorized the courts to include a "reasonable suspicion" qualification for a warrantless search of the residence of a defendant who is to be placed on supervised release and, like the defendant here, is required to register under the Sex Offender Registration and Notification Act:

> The court may order, as an explicit condition of supervised release for a person who is a felon and required to register under the Sex Offender Registration and Notification Act, that the person submit his person, and any property, house, residence, vehicle, papers, computer, other electronic communications or data storage devices or media, and effects to search at any time, with or without a warrant, by any law enforcement or probation officer with reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct by the person, and by any probation officer in the lawful discharge of the officer's supervision functions.

18 U.S.C. § 3583(d).

Accordingly, the "reasonable basis to believe" standard set out in the conditions of supervised release known to the defendant, who was very familiar with supervised release, *see* Government Exhs. 2, 4-6, is applicable to Cook's limited search of the second bedroom in the defendant's apartment.

### B. The Search for the Laptop

The defendant argues that Cook lacked a reasonable basis to believe that she would find a computer in the second bedroom of the defendant's apartment. Reply to Opposition to Motion to Suppress ("Reply") (ECF No. 17) at 6. He cites *Maryland v. Buie*, 494 U.S. 325 (1990), without a pinpoint citation, for the unremarkable proposition that "[r]easonable suspicion is a reasonable belief based on specific and articulable facts, rather than a mere inchoate and unparticularized suspicion or hunch." *Id.*

The information available to Cook when she asked the defendant whether she could look for a computer in the second bedroom easily meets this standard. She saw a computer power cord, still plugged into the wall, on a desk that also held a cup of coffee and a burning cigarette. She knew that the defendant had a history of violating conditions of release. There was no one other than the defendant in the apartment when she and Officer Tait arrived. Any reasonable probation officer would have suspected, under these circumstances, that the defendant possessed and had been using a computer in violation of the conditions of his supervised release.

This conclusion makes it unnecessary to consider the defendant's argument that his consent to the search of the second bedroom was involuntary.

### C. The Seizure of the Laptop

The defendant contends that, independent of the search, Cook's seizure of the computer "was in violation of the fourth amendment because it was without probable cause, without

consent, and without a warrant or exception to the warrant requirement." Motion at [4]. He cites no authority in support of this novel argument that, carried to its logical end, means that no law enforcement officer may seize evidence of a crime without the consent of its possessor or a court warrant.

The government responds that seizure of the computer was justified for the same reasons as those supporting the search. Government's Opposition to Defendant's Motion to Suppress Evidence ("Opposition") (ECF No. 16) at 12. The applicable legal standard in this circuit makes this sufficient. *United States v. Reynolds*, No. CR-07-86-B-W, 2009 WL 1090674, at * 3 n.3 (D. Me. Apr. 21, 2009).

I note also that the first additional condition of probation quoted above expressly allows the probation officer to "remove" the defendant's computer when necessary for a more thorough search.

### D.  The Initial Forensic Examination of the Laptop

The defendant makes the same assertion about Turgeon's initial forensic examination of the defendant's laptop: it was "in violation of the fourth amendment because it was without probable cause, without consent, and without a warrant or exception to the warrant requirement." Motion at [5]. A warrant was required, he asserts, because "[a] computer hard drive is identical to a closed contained for Fourth Amendment purposes." *Id*. The single case cited by the defendant in support of this assertion, *United States v. Gimmet,* 439 F.3d 1263 (10th Cir. 2006), is irrelevant here. In that case, a search warrant had issued, and the question was whether sufficient probable cause existed to support the warrant. Here, I have already concluded that neither the search for the laptop nor its seizure required consent or a warrant.

8

A case cited by the government, *Trobee v. United States*, No. CIV 10-5093-RHB, 2011 WL 652542 (D.S.D. Feb. 11, 2011), is instructive in this regard. In that case, a defendant convicted of possession of child pornography embarked on supervised relief after serving the incarceration period imposed by his sentence. *Id*. at *1. The conditions of his supervised release included, in relevant part:

> 13. The defendant shall submit to a warrantless search of his person, residence, place of business, or vehicle at the discretion of the probation officer.
>
> * * *
>
> 15. The defendant shall consent to his probation officer and/or probation service representative conducting periodic unannounced examinations of his computer(s) equipment which may include retrieval and copying of all memory from hardware/software to ensure his compliance with this condition and/or removal of such equipment for the purposes of conducting a more thorough inspection; . . .
>
> * * *
>
> 20. The defendant shall not possess or use a computer with access to any 'on-line' computer service at any location . . . without prior written approval of the U.S. Probation Office of this Court.

*Id*.

The court held that the probation officer, having information that the defendant had been accessing on-line services without the permission of his probation officer, had sufficient information to support a thorough search of any computer equipment found in the defendant's possession, including encrypted files. *Id*. at *5. "Not only was the access of the internet a violation of [the defendant's] conditions of supervised release, it presented the same conditions under which [he] had committed his offense of conviction, the possession of child pornography acquired through the use of the internet." *Id*.; *see* Govt. Exh. 1. It should be noted here that the defendant's conditions of supervised release also prohibited him from engaging in any criminal conduct. Govt. Exh. 3 at [3]. Given the likelihood that the defendant had hidden a computer before answering the door to his apartment, his lie when asked if there was a computer in the

second bedroom, his criminal history, and the location of a modem immediately under the laptop, Cook and Turgeon had more than a reasonable suspicion that the defendant had also violated his conditions of supervised release by committing again the crime that had initiated all of the subsequent proceedings against him. In addition, Turgeon testified that Cook told him that she was looking for evidence of "any violations" of the defendant's conditions of supervised release. Under these circumstances, Turgeon did not need to seek a search warrant.

The defendant also contends that Turgeon's search of the laptop exceeded the permissible scope of any warrantless search, because Turgeon needed only to determine whether the computer had been connected to the internet, which can be determined without opening any of the internet files themselves. Reply at 6-7. As I have already noted, Turgeon's search of the laptop was not so circumscribed.

### E. Agent Fasulo's Post-Warrant Search

Finally, the defendant challenges Agent Fasulo's search of the laptop, asserting that the warrant authorizing that search was invalid because it was based upon illegally gathered evidence. Motion at [5]-[6]. Specifically, he contends that paragraphs 11 and 12 must be excised from the affidavit submitted in support of the application for the warrant, leaving it insufficient to establish probable cause. *Id.*

The affidavit in question is attached to the search warrant that is in turn attached to the Motion. Those two paragraphs deal with Turgeon's forensic examination of the laptop. Affidavit in Support of an Application for a Search Warrant (included in ECF No. 14-1) ¶¶ 11-12. Since I have rejected the defendant's contention that Turgeon's examination was constitutionally invalid, the defendant's argument concerning the search warrant necessarily fails.

### III.  Conclusion

For the foregoing reasons, I recommend that the proposed findings of fact be adopted and that the motion to suppress be **DENIED.**

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 31st day of May, 2013.

                                                /s/  John H. Rich III
                                                John H. Rich III
                                                United States Magistrate Judge